IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

MICHAEL GRACE,                              :

      Plaintiff,                          :

                                        Case No. 3:05cv038

           vs.                             :

                                         JUDGE WALTER HERBERT RICE

CITY OF XENIA, OHIO                         :

      Defendant.

---

DECISION AND ENTRY SUSTAINING MOTION OF DEFENDANT CITY
OF XENIA, OHIO, FOR SUMMARY JUDGMENT (DOC. #55);
JUDGMENT TO ENTER IN FAVOR OF DEFENDANT AND AGAINST
PLAINTIFF; TERMINATION ENTRY

---

The Plaintiff, Michael Grace, is the owner of the real property located at

1119 Jasper Road, Xenia, Ohio.  Prior to the initiation of this litigation, said

property housed two structures - - - a residence and a garage.  It is the demolition

of these structures, as public nuisances, that is the focal point of the present

controversy.  Grace brings suit against Defendant City of Xenia, Ohio ("City"),

alleging that the City violated his federal and state procedural due process rights, in

the destruction of said property.

Presently before the Court is a Motion (Doc. #55) by the Defendant for

summary judgment on both of the claims asserted in the Plaintiff's Complaint, to

wit:  (1) violation of the Plaintiff's Fourteenth Amendment procedural due process

rights (Count I), and (2) violation of the Plaintiff's procedural due process rights, under Article 1, Section 16 of the Ohio Constitution (Count II).


I.    SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go

2

beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. <u>Celotex</u>, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. <u>Anderson</u>, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . .

3

obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . .").  Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

II.    FACTS[1]

The Plaintiff has owned the Jasper Road property for approximately 18 years, originally having purchased it with the intention to renovate it as an investment. Doc. #38 at 15 (Grace Dep. at 10-12).  In November 2000, a vehicular accident occurred on and around the property, ending with an automobile

---

[1]Since this case comes before the Court on the Defendant's Motion for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff, as the party against whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

4

completely breaking through one of the side walls and windows of the house and coming to a rest partially inside the structure. Doc. #55, Attach. #1 (Pratt Aff.) ¶ 9 & Ex. A-2; Doc. #49, Attach. #1 (McKinney Dep.) at 5-6.  After the accident, a tarp was placed over the hole in the side of the house and the house sat unoccupied for approximately two years before the events transpired that are the subject of the present litigation. Doc. #38 at 6-7 (Grace Dep. at 52-59).

In early 2003, two inspections were made of the Jasper Road property - - - one by the City Engineer and one by the Fire Chief.[2]  With regard to the City Engineer's inspection, the City's property maintenance inspector (also known as the code enforcement officer) requested the inspection. Doc. #45 (Spring Dep.) at 18, 50; Doc. #51 (Jones Dep.) at 10; Doc. #70 (Duteil Dep.) at 5.[3]  At the conclusion of his inspection, the City Engineer completed a pre-printed letter declaring the property to be a public nuisance by reason of

> continued vacancy thereby resulting in lack of reasonable or adequate maintenance of structures and grounds and causing deterioration and blighting influence on nearby properties and thereby depreciating the enjoyment and use of the property in the immediate vicinity to such an

---

[2]In his deposition, the City Zoning Enforcement Officer explained that four people in his department were involved with determining "whether buildings were dilapidated such that they constituted nuisances," to wit:  himself (the Zoning Enforcement Officer), the fire chief, the city engineer and the property maintenance inspector. Doc. #45 (Spring Dep.) at 18.

[3]The Plaintiff points out that the City of Xenia had a contract with Greene County for the County to conduct the City's building inspections for, among other things, demolitions. Doc. #69 (Shaffer Dep.) at 25-26, 35.  As will be further explained herein, the Court finds this fact irrelevant to the determination of the issues in this case.

extent that it is harmful to the community in which such structure is situated.

Doc. #51, Attach. #2 at 1. On the letter, the City Engineer also made hand-written annotations indicating that the house was vacant, there was a tarp over the hole in the wall and there was no electrical service. Id. at 2. As to the garage, the Engineer noted that it had no windows or doors and that the roof was collapsing. Id. The letter was dated February 6, 2003. Id. at 1.

On that same date, the Fire Chief completed a pre-printed letter, based upon his inspection of said premises, wherein he also concluded that the structures thereon constituted public nuisances, "by reason of one or more of the following":

1. Being detrimental to the general health of the community.

2. Being a fire hazard.

3. Being unsafe for occupancy or use, in, upon, about or around the above mentioned premises.

4. Continued vacancy thereby resulting in lack of reasonable or adequate maintenance of structures and grounds and causing deterioration and blighting influence on nearby properties and thereby depreciating the enjoyment and use of the property in the immediate vicinity to such an extent that it is harmful to the community in which such structure is situated.

Doc. #50, Attach. #2 at 1.[4]

---

[4]The Plaintiff presents evidence indicating that, in contrast to the pre-printed letter signed by the Fire Chief in this case, it was customary for the Chief to create a written report setting out his specific findings as to why the property constituted

In response to these two investigatory conclusions, the Zoning Enforcement

Officer sent the Plaintiff a letter, dated February 21, 2003, which provided as

follows:

> Recently an inspection was made at 1119 Jasper Road, Xenia, Ohio.
> This inspection revealed dilapidated structures. It has been
> determined that the structures are one or more of the following:
> detrimental to the general health of the community, a fire hazard,
> unsafe for use on, in, upon, about or around the above mentioned
> premises, and by lack of maintenance are creating a blighting influence
> on nearby properties and thereby to the neighborhood and the
> community.

> Therefore, the structures referenced above are declared a "Public
> Nuisance[,]" as defined by Section 1472 of the Xenia City Codified
> Ordinances. You must abate the nuisance by demolition. As required
> by the Ordinance, such abatement shall start within 15 days of the
> date of this notice and shall be completed within 45 days. If the
> nuisance is not abated within the allocated time frame, the City of
> Xenia will need to abate the public nuisance by removal of the
> structure with all costs incurred recovered from you, the owner.

> It is important if you have any questions or concerns that you contact
> [the Zoning Enforcement Officer] at [phone number] or [the]
> Community Development Director at [phone number].

Doc. #45, Attach. #2 at 4. The City sent the letter to the Plaintiff by certified mail,

return receipt requested, and the Plaintiff acknowledges receipt of the same. Doc.

#38 at 18 (Grace Dep. at 22-23).

---

a public nuisance and also that, upon later questioning, the Chief was unable to
produce copies of any notes he might have taken when he inspected the Jasper
Road property. Doc. #71 at 6-7 (citing various supporting evidentiary materials).
As the Court will explain, *infra*, it finds these facts irrelevant to the determination
of the issues in this case.

A few weeks after receiving the letter, the Plaintiff called the Zoning Enforcement Officer and the Plaintiff then followed up that telephone conversation with a letter that summarized the conversation.  That letter, in its entirety, read as follows:

> Thanks for taking the time to take my call this afternoon.  Here is my letter in response to our conversation.  As I stated[,] I [had] started cleaning out the above property before the snowstorms, when the level three was issued.  At that time[,] the weather was [too] bad to continue, but my intention is to continue with the cleaning and renovations of the property.  Per our conversation[,] I am currently out of town, and I will be returning sometime the week of March 17.  I have already secured a dumpster for the garage and anticipate having that finished within one month, barring no weather delays when I return.  I will also start the other portion of the house after I have worked on the garage.  My plans are to renovate the property and to then sell the property. . . .  I am not listing all of our conversation in order to expedite this fax to you.

Doc. #50, Attach. #2 at 3.  In response to the Plaintiff's letter, the Zoning Enforcement Officer sent the Plaintiff another letter, dated March 18, 2003, stating that, in accordance with Section 1472.06 of the Xenia Code, the City was granting the Plaintiff "90 days from today's date to submit to our office plans and specifications for the proposed structure repairs, along with a completed zoning application." Id. at 4.  The letter continued by indicating that once the City approved said plans, the Plaintiff would be given 30 days to effect and complete the repairs and/or replacements of the house and garage. Id.  The letter also instructed that the Plaintiff would need an approved zoning permit from the City (a form for which was included for his convenience), as well as a building permit from the County, before

8

beginning the repairs. Id. The letter concluded with an invitation to call with questions. The Plaintiff received the letter, by certified mail, on March 25, 2003. Doc. #38 at 19 (Grace Dep. at 28-29).

The Plaintiff never submitted plans to the City for approval, nor did he request a zoning permit or an extension of the deadlines provided in the second notice. Id. at 20 (Grace Dep. at 32-33); Doc. #55, Attach. #3 (Spring Aff.) ¶¶ 8-9, 11. The Plaintiff claims that, during this time period, he was "moving along doing renovations" and that he kept the Zoning Enforcement Officer apprised of his progress.[5] Doc. #38 at 3-4, 11 (Grace Dep. at 41-45, 70-72).

When the deadline for submission of the plans passed without compliance by the Plaintiff, the City published a notice for two consecutive weeks in the Xenia Daily Gazette, a newspaper of general circulation in the community in which the property in question is located,[6] stating that the property at 1119 Jasper Avenue would be demolished. Doc. #54, Attach. #2, Ex. F. The newspaper ran the notices on September 30, 2003, and on October 7, 2003. Id.[7] The Plaintiff applied for an

---

[5]The Plaintiff cannot, however, point to dates for any of the alleged conversations or provide any receipts or other evidence to show any materials he purchased for the alleged renovations. Doc. #38 at 3-4, 11 (Grace Dep. at 41-45, 70-72).

[6]A matter of which this Court can take judicial notice.

[7]It is presumed that the Plaintiff did not actually see these notices. Although he owned real property in Xenia, Ohio, he maintained his personal residence in the neighboring community of Waynesville, Ohio. Doc. #38 at 14 (Grace Dep. at 6); Doc. #45, Attach. #2 at 4. This is immaterial, however, given that Plaintiff concedes he received notice of the finding that his property constituted a public

electrical permit from the County on October 13, 2003, but did not advise anyone

at the City that he had done so, until after the demolition was complete. Doc. #39

at 5-6 (Grace Dep. at 92-94); Doc. #55, Attach. #3 (Spring Aff.) ¶ 10.

In October or November, 2003, the Zoning Enforcement Officer conducted

an inspection of the property at 1119 Jasper Road and determined that no progress

had been made in abating the public nuisance. Doc. #45 (Spring Dep.) at 37 (noting

that the condition of the property was "similar or identical to the previous condition

that was noted" when the City originally deemed the property a "public nuisance").

He then commenced the process of abating the nuisance, which concluded with the

demolition of the two structures, on November 6 and 7, 2003.[8] Doc. #39 at 5-6

(Grace Dep. at 93-94); Doc. #52, Attach. #1 (Collett Dep.) at 20-22.

Subsequently, the City informed the Plaintiff that the costs of the demolition,

attributable to him, were $4,000. Doc. #55, Attach. #3 (Spring Aff.) ¶ 12.


III.    ANALYSIS

In Count I of his Complaint, the Plaintiff alleges that the City violated his

_____

nuisance and the need to take certain steps to avoid demolition.

[8]The City points out that § 1472.08(a) of the Xenia Code provides that if the nuisance is not abated by the date stated in the notice or at the expiration of the time stated in a special building permit issued by the Zoning Enforcement Officer or at such additional time as the City Council may grant, "the Zoning Enforcement Officer shall be authorized, at any time thereafter, to enter upon such premises . . . to abate the nuisance by demolition and removal of the structure . . . ." Doc. #45, Attach. #2 at 23.

Fourteenth Amendment due process rights when it "demolished [his] structure without providing notice to [him] of Defendant Xenia's intent to demolish said structure pursuant to Sections 1472.03(b), 1472.05, 1472.06, 1472.07, and 1472.08 of Defendant Xenia's City Ordinances . . . ."[9] Doc. #3 ¶ 19. Count II of the Complaint alleges a violation of the Plaintiff's due process rights, under Article I, Section 16 of the Ohio Constitution, using language identical to Count I, excepting the omission of the reference to the various sections of the Xenia City Codified Ordinances.

Courts have recognized that Article I, Section 16 of the Ohio Constitution is "equivalent to the due process clause of the Fourteenth Amendment." Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy, 740 F.2d 1362, 1367 (6th Cir. 1984) (quoting Saultz v. Funk, 64 Ohio App. 2d 29, 39, 410 N.E.2d 1275 (1979)). Because the framework for analyzing the Plaintiff's due process claims under the Ohio Constitution and the Fourteenth Amendment is the same, the Court will consider both claims together.

---

[9]This language concludes with the following phrase: "where Plaintiff Michael Grace had obtained a permit to perform the necessary electrical repairs prior to the demolition." Doc. #3 ¶ 19. The Plaintiff makes no further mention of this fact in his Memorandum in Opposition. Further, the Court finds it irrelevant to the resolution of this case, because the parameters established by the City did not include that he secure an electrical permit in order to avoid the demolition of the structures, as will be more fully explained herein. Additionally, Plaintiff does not contend that he advised anyone at the City as to the existence of said permit, prior to the demolitions taking place.

A.    Arguments of the Parties

As previously stated, the Plaintiff, in his Complaint, asserts that "Defendant Xenia . . . has demolished Plaintiff Michael Grace's structure without providing notice to [him] of Defendant Xenia's intent to demolish said structure pursuant to [provisions of various Xenia ordinances]." Doc. #3 ¶ 19.  In his Memorandum in Opposition to the Defendant's Motion for Summary Judgment, the Plaintiff concedes that he received notice of the impending demolition, but asserts that the City failed to follow its ordinances and, thus, caused the Plaintiff's property to be demolished without due process. Doc. #71 at 15 ("Due to [its] failure to follow [its] ordinances, the City caused Mr. Grace's property to be demolished without due process of law.").[10]  The Plaintiff then cites several examples of the manner in which the City allegedly failed to follow its ordinances.

The provision of the Xenia ordinance to which the Plaintiff points, in support of his argument, is Section 1472.03 ("Ordinance"), which is contained in the "Nuisances and Dangerous Structures" chapter of Xenia's municipal code.  That Section provides as follows:

(a) Whenever the Zoning Enforcement Officer suspects the existence of a public nuisance in the City, he or she shall promptly cause to be

_____

[10]More specifically, the Plaintiff's Memorandum in Opposition provides that "[t]his case is not about whether Michael Grace received notice that the City of Xenia Zoning Officer had concluded that his property at 1119 Jasper Road was considered to be a nuisance. . . .  The issue is whether the City defendant followed their ordinances and provided due process of law to Michael Grace to justify the demolition of the Jasper Avenue property." Doc. #71 at 2.

inspected the premises on which he or she suspects such public nuisance exists.  If the Zoning Enforcement Officer finds that a public nuisance does exist, he or she shall promptly notify the Fire Chief. The Fire Chief shall cause to be inspected the premises on which it is suspected such public nuisance exists.  Written reports of such inspection, with respect to the existence of the public nuisance, shall be filed with the Zoning Enforcement Officer.

(b) If the Fire Chief finds that a public nuisance exists, the Zoning Enforcement Officer shall cause photographs of such nuisance to be made and shall file and keep, in his or her office, the written report of the findings of the Fire Chief.  The Zoning Enforcement Officer shall cause a written notice to be served on the owner stating the findings, with respect to the existence of a public nuisance, and stating that unless the owner thereof causes the abatement of the public nuisance by removal of the building or structure, the same will be abated by the City, at the expense of such owner.  Such abatement shall start within 15 days after service of such notice and shall be complete within 45 days or such additional time as the Zoning Enforcement Officer may deem necessary to complete the removal.

Doc. #45, Attach. #2 at 21.  The Plaintiff claims that the Defendant violated this Ordinance in various and sundry ways, some of which include the following:  (1) someone other than the Zoning Inspection Officer requested that the City Engineer conduct the first inspection of the premises; (2) the Zoning Inspection Officer did not request that the inspection be conducted by the Greene County Building Inspector's Office, even though it had done so in the past;[11] (3) the Fire Chief filled

---

[11]In furtherance of his argument that the City should have contacted the County Building Inspector's Office, the Plaintiff also alleges that the City Engineer (who conducted the initial inspection) was not qualified to perform such an inspection. Doc. #71 at 11.  Although it appears that the Plaintiff is intimating that the City Engineer's lack of competence to perform said inspection could indicate that the buildings should not have been declared public nuisances, the Plaintiff has not set forth such a claim in his Complaint nor otherwise argued it in his

out a pre-printed form, upon completion of his inspection, as opposed to preparing a more comprehensive report which included his specific findings; and (4) no photographs of the property were taken after the Fire Chief prepared his report.[12] Doc. #71 at 9-12.

The Plaintiff also argues that the City violated the Ordinance, because the correspondence that the Zoning Inspection Officer sent to the Plaintiff reiterated the general and broad categories stated in the Fire Chief's form letter, rather than setting out the Chief's specific findings. Id. at 12-13.  Based on this alleged oversight, the Plaintiff asserts that he did not receive adequate notice of the impending property demolition. Id. at 13.

B.    Legal Analysis; Fourteenth Amendment Procedural Due Process Rights

The Due Process Clause of the Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process

---

Memorandum.  Further, the facts of this case indicate that the Plaintiff acceded to the public nuisance determination by asking if he could renovate the buildings, in order to bring them up to standards (and avoid demolition), rather than challenging the findings. See Doc. #45, Attach. #2 at 23 (Xenia Municipal Code § 1472.07, providing that an owner may, within ten days of receiving notice of a public nuisance determination, make a demand to the City Manager for a hearing on the question of whether, in fact, a public nuisance exists).

[12]The City took photographs at some point in time during the events at issue, but it is unclear when. See Doc. #45 (Spring Dep.) at 38.  Here, the Plaintiff is arguing that the photographs were not taken after the Fire Chief prepared his report, thus leaving the implication that the City must have taken the photographs before the Chief prepared his report.

of law." U.S. Const. amend. XIV.  The Ohio Constitution provides the same

guarantees. Ohio Const. art. I, § 16; Akron v. Chapman, 160 Ohio St. 382, 385,

116 N.E.2d 697, 699 (1953) ("Section 1, Article XIV, Amendments, United States

Constitution, and Section 16, Article I, Ohio Constitution, both provide that no

person shall be deprived of life, liberty or property without due process of law.").

To succeed on a procedural due process claim, a plaintiff must first establish

the existence of a liberty or property interest, of which he was deprived by the

defendant. Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 82, 98

S.Ct. 948 (1978).  Property interests are created by state law. Id.  The parties to

the present litigation do not dispute that the Plaintiff was deprived of a property

interest when the City demolished his two structures.

Assuming a plaintiff establishes that he was deprived of a constitutionally

protected interest, he must then demonstrate that he was deprived of that interest,

without due process of law.  As to the process that is required by the Constitution,

the United States Supreme Court explains that,

> [a]n essential principle of due process is that a deprivation of life,
> liberty, or property be preceded by notice and opportunity for hearing
> appropriate to the nature of the case.  We have described the root
> requirement of the Due Process Clause as being that an individual be
> given an opportunity for a hearing before he is deprived of any
> significant property interest.

Loudermill, 470 U.S. at 542 (internal quotations omitted); see also Harris v. City of

Akron, 20 F.3d 1396, 1401 (6th Cir. 1994) ("Generally, the process that is due

before the state may deprive an owner of property includes notice to the owner

15

prior to the deprivation and an opportunity for a predeprivation hearing.").  With regard to the notice requirement, "[t]he relevant inquiry is whether notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Eaton v. Charter Twp. of Emmett, 2008 U.S. App. LEXIS 6603, *6 (6th Cir. Mar. 21, 2008) (quoting Mullane v. Cen. Hanover Bank & Tr. Co., 339 U.S. 306, 314, 70 S. Ct. 652 (1953)).  "The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested to make their appearance." Mullane, 339 U.S. at 314 (citations omitted).

As to violations of state or city procedural rules, the fact that a municipality violated its own stated procedure "does not in and of itself implicate constitutional due process concerns." Brody v. City of Mason, 250 F.3d 432, 437 (6th Cir. 2001) (quoting Purisch v. Tennessee Tech. Univ., 76 F.3d 1414, 1423 (6th Cir. 1996)). The focus, rather, is on "whether plaintiffs were afforded the process due to protect their property rights, as opposed to whether the City necessarily conformed to each of the state and city procedural requirements." Id.  Or, stated another way, procedural violations are only relevant "if such violations deprived plaintiffs of due process." Id.; see also Laney v. Farley, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("[A] § 1983 claim may not be based upon a violation of state procedure that does not violate federal law."); Purisch, 76 F.3d at 1423 (citing, with favor, Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993), which stated that, "[a] state cannot be said

16

to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable").

With each of the alleged violations of the Ordinance, except the one pertaining to the failure to include the specific findings of the Fire Chief in the correspondence to the Plaintiff, Plaintiff herein has done nothing more than allege that the City violated its Ordinance. Assuming, without deciding, that the City did violate the Ordinance as the Plaintiff has suggested, he has not argued that the alleged violations caused a deprivation of his constitutional right to notice, nor does the Court find that any such deprivation occurred as a result of the assumed violations.[13] Because the mere violation of a city's procedural rules is irrelevant in a due process analysis, absent an associated allegation of a deprivation of a due process right, the Court finds that there is no genuine issue of material fact, as to the Plaintiff's procedural due process claims, based on these alleged violations of the Ordinance.

As to the final alleged Ordinance violation (that the correspondence from the City to the Plaintiff to did include the specific findings of the Fire Chief), the Plaintiff does assert that, as a result of this violation, he did not receive adequate notice of

---

[13]The Court questions the validity of all of these alleged violations of the Ordinance. For example, the Ordinance requires only that the Zoning Enforcement Officer "shall cause to be inspected the premises on which he or she suspects [a] public nuisance exists." It in no way binds the Zoning Enforcement Officer to use the Greene County Building Inspector's Office or any other person or entity, for that matter, to make such inspections.

the impending property destruction.  Thus, the Court will consider this allegation in more detail, since Plaintiff does allege a constitutional violation therein.

The City sent the Plaintiff two items of correspondence pertaining to the looming demolition of his buildings.  The first, dated February 21, 2003, informed him that the City had inspected his property and had determined that the structures thereon were a "public nuisance," as defined by Section 1472 of the Codified Ordinances of the City of Xenia.  It further instructed him that he must begin abating the nuisance within 15 days of the letter's date and complete the abatement process within 45 days.  Should the abatement process not proceed as indicated, the City cautioned that it would abate the nuisance by removing the structures, with all costs to be charged to the Plaintiff.  The letter concluded by urging the Plaintiff to call the Zoning Enforcement Officer with any questions or concerns.

A few weeks after the Plaintiff received this letter, he contacted the City and requested additional time to clean and renovate the property, a request that was granted.  The City sent the Plaintiff a second letter, dated March 18, 2003, to set forth the details of the new agreement, wherein it granted the Plaintiff 90 days from the date of the letter "to submit to our office plans and specifications for the proposed structure repairs, along with a completed zoning application."[14]  The letter

---

[14]The letter specified that its contents were in accordance with Section 1472.06, of the Xenia City Codified Ordinances. Doc. #50, Attach. #2 at 4. Section 1472.06, entitled "Right to Make Immediate Repairs," reads as follows:

then provided that once the City approved the Plaintiff's plans, he would have 30 days to complete the repairs to the structures.  Once again, the letter concluded with an invitation to call the Zoning Enforcement Officer with questions.

The Plaintiff alleges that the City's failure to include the specific findings of the Fire Chief violated the requirements of the City Ordinance, as well as constituting a violation of his due process rights, because such omission caused him to receive inadequate notice of the upcoming demolition of the structures.  First, the Court concludes that the failure to include the Fire Chief's specific findings in the correspondence did not violate the provision of the Ordinance in question, which required only that the notice "stat[e] the findings, with respect to the existence of a public nuisance . . . ."  As this language indicates, there is no requirement that the

_____

> Upon being served notice, the owner or owners may make immediate application, in writing or in person, to the Zoning Enforcement Officer for a special building permit to undertake the repair or replacement of items found to constitute a public nuisance.  Plans and specifications, as required by the Zoning Enforcement Officer, covering the repairs or replacements shall be furnished by such owner or owners to the Zoning Enforcement Officer within 15 days after receipt of notice or such additional time as the Zoning Enforcement Officer may deem necessary to complete the plans and specifications, not to exceed 90 days.  The Zoning Enforcement Officer shall, upon approval of such plans and specifications, issue a special building permit to the owner or owners, such permit to be for a period of 30 days.  Within such 30 days, the owner or owners will effect and complete such repairs and/or replacements . . . .

Doc. #45, Attach. #2 at 22-23.  The provision goes on to state that, within the final 30 day period, "the Zoning Enforcement Officer may grant an extension of the special building permit if the owner or owners show reason or cause for the requested extension and the extension will more readily effect such repairs and/or replacements." Id. at 23.

19

owner receive notification of "specific findings of the Fire Chief," only that he receive notice stating that the City had determined that a public nuisance existed.

Whether the City did or did not violate the provisions of the Ordinance is not decisive of the issue at hand, however.  The question is whether, by omitting the specific findings of the Fire Chief in its correspondence to the Plaintiff, the City deprived him of his constitutional due process right to notice that his property was about to be destroyed.  The Court concludes that it did not.

The first letter from the City quite clearly informed the Plaintiff that his property had been deemed a public nuisance and that the City would abate the structures thereon, by demolition, if the Plaintiff did not take certain steps to abate the nuisance himself.  It is in this original letter that the specific findings of the Fire Chief would have been the most appropriate addition, but the Court finds that a detailed list of why the City concluded as it did, although informative, would have added little to the notice that the property would be destroyed, which the Plaintiff received therein.

The Court finds that the notice provided by the City in its first letter, without the addition of the specific reasons for its decision, was sufficient to pass constitutional muster.  The Due Process clause does not require that notice encompass every specific detail about a forthcoming property deprivation, it simply requires that a person be given notice that is "reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an

20

opportunity to present [his] objections." Mullane v. Cen. Hanover Bank & Tr. Co.,

339 U.S. 306, 314, 70 S. Ct. 652 (1953) (emphasis added).  The initial letter

informed the Plaintiff that the City had declared his property to be a public nuisance

and that, absent certain actions on his part, the City would demolish his property

(the pendency of the action).  The letter went on to give him the opportunity to

contact the City to express his concerns or questions (affording him the opportunity

to present his objections).  Even assuming, *arguendo*, that the letter did not

sufficiently notify the Plaintiff of the details of the pending deprivation, he had the

opportunity and took the opportunity to question the City about those details.  It is a

fair assumption that during this initial conversation between the Plaintiff and the

City, the City relayed all of the details of why it had declared the property a public

nuisance, given that the Plaintiff was granted permission to make the necessary

repairs (to abate those very problems) in order to reverse the City's determination.

Thus, even if the initial letter were insufficient (which the Court does not find to be

so), the events that transpired after the receipt of the initial letter (i.e., the

conversation(s) between the Zoning Enforcement Officer and the Plaintiff, as well as

the Plaintiff's follow-up letter and the City's second letter to the Plaintiff), indicate

that the Plaintiff ultimately received sufficient notice of the planned demolition and

the reasons therefor.

Having found no genuine issue of material fact as to whether the City failed

to give the Plaintiff proper notice of its intent to destroy the structures on his

property, the Defendant's Motion for Summary Judgment (Doc. #55) is

SUSTAINED.[15]

IV.     CONCLUSION

The Defendant's Motion for Summary Judgment is SUSTAINED, in its

entirety. Doc. #55.  Judgment is to be entered on behalf of the Defendant and

against the Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket

records of the United States District Court for the Southern District of Ohio,

Western Division, at Dayton.

April 15, 2008

                                            /s/ Walter Herbert Rice
                                            WALTER HERBERT RICE, JUDGE
                                            UNITED STATES DISTRICT COURT

Copies to:
Counsel of record

_____

[15]The Court does not address the question of whether the hearing
requirements in the Xenia Municipal Code provisions are sufficient, because the
Plaintiff does not raise this issue.